AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

Northern District of California

FILED
MAG
FEB -1 A 10:51
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| Jeffrey Wertkin, | ) Case No. |
|  | ) |
|  | ) 3 17 70131 |
| _Defendant(s)_ | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 31, 2017 _____ in the county of _____ San Francisco _____ in the
_____ Northern _____ District of _____ California _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 401(3) | Contempt of court |

Penalties:

(1) A term of imprisonment or fine or both; and
(2) Special assessment:  $100.00

Approved as to form:

_Robin L. Harris_
AUSA Robin L. Harris

This criminal complaint is based on these facts:

See attached AFFIDAVIT OF SPECIAL AGENT WILLIAM SCANLON IN SUPPORT OF CRIMINAL COMPLAINT

☑ Continued on the attached sheet.

_____
_Complainant's signature_

William Scanlon, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: _2-8-2017_

_____
_Judge's signature_

City and state: _____ San Francisco, California _____      Hon. Laurel Beeler, United States Magistrate Judge
_Printed name and title_



## AFFIDAVIT OF WILLIAM A. SCANLON

I, WILLIAM A. SCANLON, Special Agent of the Federal Bureau of Investigation, being duly sworn, do declare and state:

## I.   **INTRODUCTION**

1.   I am an "investigative or law enforcement officer of the United States" within the meaning of § 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, § 2516.

2.   This Affidavit is made in support of a Criminal Complaint charging JEFFREY WERTKIN with Contempt of Court and Obstruction of Justice in violation of 18 U.S.C. § 401(3).

3.   Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause for the January 31, 2017 arrest of defendant JEFFREY WERTKIN, I have not included each and every fact known to me that supports probable cause for arrest.  Rather, I have set forth only the facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.

4.   In addition, where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part.  Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

## II.   **AGENT BACKGROUND**

5.   I am a Special Agent (SA) of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been so employed since June 2003.  I am currently assigned to the San Francisco Field Division of the FBI, and I investigate cases involving public corruption.  I have received training at the FBI Academy in Quantico, Virginia, including training on white collar crimes and public corruption.  I have participated in numerous local and federal search warrants and arrests involving many different types of crimes.  I have participated in numerous investigations of many different types of crimes.  These investigations have involved the use of confidential sources, wire and physical surveillance.

## III.   **APPLICABLE LAW**

6.   Under Title 18 U.S.C. § 401(3), a Court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

## IV. STATEMENT OF PROBABLE CAUSE

7.  I have spoken with a high ranking EMPLOYEE ("EMPLOYEE") at a company ("the company") that provides technology security and is headquartered in Sunnyvale, California.  I have also reviewed audio recordings and documentary evidence and had discussions with other agents involved in this investigation, and I have learned the following:

    a.  On November 30, 2016, EMPLOYEE received a voicemail from an unidentified caller.  In the voicemail, the caller referenced a sealed False Claims Act (FCA) complaint filed in the Northern District of California against the company. The caller said if EMPLOYEE would like to discuss further he could be reached at 202-230-9050.

    b.  On November 30, 2016, EMPLOYEE called the person back at the number provided. The caller would not share his last name, only that his first name was "Dan." Dan told EMPLOYEE he would send the first page of the sealed complaint in order to prove that a complaint against the company had, in fact, been filed. EMPLOYEE offered his email address, but Dan was not comfortable sending it via email but said he would be comfortable sending it via regular mail. EMPLOYEE then provided the company's physical mailing address. Dan told EMPLOYEE he would mail the first page of the sealed complaint to show that a complaint was in fact filed, and for a "consulting fee" paid by the company, Dan would send the rest of the complaint. Subsequent to this call, Dan mailed a redacted version of the first page of the complaint to EMPLOYEE.

    c.  Sometime shortly after November 30, 2016, EMPLOYEE received a redacted copy of a sealed complaint in the U.S. mail. The complaint has been verified by me as a legitimate complaint in an ongoing Qui Tam civil matter filed under seal in January, 2016, pursuant to 31 U.S.C. § 3730(b)(2) and pending before the Honorable Jacqueline Scott Corley in the San Francisco division of the United States District Court in the Northern District of California.

    d.  On December 22, 2016, FBI Agents spoke to EMPLOYEE. EMPLOYEE agreed to make recorded telephone calls to Dan.  EMPLOYEE subsequently made multiple recorded telephone calls to Dan. During the course of the first call on December 22, 2016, Dan said he would be willing to provide a full copy of the sealed complaint in exchange for $300,000.  EMPLOYEE attempted to negotiate a lower price, but Dan was unwilling to lower his demand.

    e.  On January 5, 2017, Dan and EMPLOYEE engaged in another telephone conversation that was recorded.  During this call, Dan suggested to EMPLOYEE that Dan be paid in Bitcoin and explained to EMPLOYEE how Bitcoin worked and that the advantage to Bitcoin was that it could not be traced. EMPLOYEE and Dan also discussed an in-person meeting to exchange money for the complaint. Dan stated to EMPLOYEE that it was in his interest to purchase the complaint so that the company could get out ahead of the investigation.  Dan mentioned that the

government might be investigating the Company and that it was valuable to the Company to have the sealed complaint in advance.

f. On January 19, 2017, EMPLOYEE made a recorded telephone call to Dan. During this call, Dan outlined a very detailed plan for an in-person meeting to take place on Tuesday, January 31, 2017 in the Sunnyvale area at noon. Dan increased the price from $300,000 to $310,000. The price increase was to cover Dan's travel expenses and was not negotiable.

g. On January 24, 2017, EMPLOYEE made two recorded calls to Dan. During these calls, EMPLOYEE explained that a colleague of his who goes by "Bill" would meet Dan with the $310,000. EMPLOYEE and Dan agreed to a meeting on January 31, 2017 at 10:00 a.m. in a hotel lobby of Dan's choosing somewhere in or near Sunnyvale, CA. Dan told EMPLOYEE he wanted a mobile phone number for Bill so Dan could send Bill a text with the exact location of the hotel at 9:30 a.m. on January 31, 2017. Dan told EMPLOYEE that he wanted to choose the location of the meeting and that he would text the location to Bill at 9:30 a.m. in order to make sure that this was not a "sting" and that Bill would be there with the money. EMPLOYEE told Dan that Bill would have the money in a blue duffle bag and Bill would be wearing a grey Titleist hat to the meeting.

h. On January 30, 2017, EMPLOYEE made a recorded phone call to Dan. During this call, EMPLOYEE and Dan finalized the plan for Dan and Bill to meet in-person in a hotel lobby near Sunnyvale. EMPLOYEE provided Dan with a mobile phone number that Dan could use to text Bill on the morning of Tuesday, January 31, 2017. Dan confirmed that he would text Bill the address of the hotel for the meeting at 9:30 a.m. and the meeting was still scheduled for 10:00 a.m. The plan did not change in any way since the last recorded call between Dan and EMPLOYEE on January 24, 2017. Dan told EMPLOYEE that he would wear a blue hat to the meeting with Bill.

i. On January 31, 2017, Dan sent me a text at with the name of the Hotel (Hilton Garden Inn in Cupertino) and the address for the hotel. This text was received on the telephone with the number that had been provided to Dan for him to reach me (posing as "Bill"). Dan also texted me and asked what color car and what model I was driving. Shortly thereafter, I received another text from Dan that stated: "When you walk into the lobby, there is a water station on your left. Just past the water is a chair with a newspaper on it. Please sit in that chair and I will come meet you []".

j. At approximately 9:55 a.m. on January 31, 2017, I arrived at the Hilton Garden Inn in Cupertino and sat on the chair that Dan described and which did, in fact, have a newspaper on it. I was wearing a gray Titleist hat and was carrying a blue duffle bag. Approximately 10 seconds after I sat down, a male approached me and held a copy of the Complaint out and handed it to me. At that point he was immediately arrested by FBI agents who were present in the hotel lobby.

    k.  At the time of his arrest, Dan was wearing a wig which I believed was to conceal his identity. After his arrest, Dan was identified by his true name which is JEFFREY WERTKIN. I learned that WERTKIN is a former trial attorney in the Civil Division of the U.S. Department of Justice (DOJ). I am informed that in April, 2016, WERTKIN was hired as a partner at the law firm Akin Gump in Washington D.C. I have reviewed WERTKIN's on-line biography with the Akin Gump law firm. WERTKIN's biography states, among other things: "Having led more than 20 major fraud investigations on behalf of the Justice Department, Mr. Wertkin has first-hand knowledge of the legal and practical considerations that shape government investigations and FCA [False Claims Act] litigation." WERTKIN's biography also states that "[h]e is presently an adjunct professor at Georgetown University's McCourt School of Public Policy, where he teaches a course on federal agencies and administrative rulemaking. He received his J.D., as well as a Ph.D. in Government, from Georgetown University and his B.A. from Haverford College."

    l.  Shortly after his arrest, WERTKIN said out loud in the presence of an arresting officer, "My life is over."

8.  As a former trial attorney with the Department of Justice, I believe that WERTKIN would have extensive knowledge of the qui tam process and would know that such complaints are filed under seal with the court until the court lifts the sealing order.

9.  Based on the foregoing there is probable cause to believe that JEFFREY WERTKIN unlawfully sought to sell to the Company a sealed FCA complaint in exchange for $310,000, which constituted disobedience and resistance to a lawful writ, process, order, rule, decree or command of the court in violation of Title 18 U.S.C. § 401(3).

## V.  REQUEST TO SEAL AFFIDAVIT AND COMPLAINT

10.  I REQUEST, in order to avoid compromising this on-going investigation including other subjects, and for the safety of the agents and officers, that this Application, Affidavit and Complaint be filed under seal until further order of the Court except that working copies should be made available to the United States Attorney's Office, the FBI, and any other law enforcement agency designated by the United States Attorney's Office and defendant's counsel. I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

11.  I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

WILLIAM A. SCANLON
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
This 1st day of February, 2017

HONORABLE LAUREL BEELER
UNITED STATES MAGISTRATE JUDGE